OPINION
{¶ 1} Appellant, Vanosheh Darvish-Kojouri, appeals from the October 8, 2002 judgment entry of the Geauga County Court of Common Pleas, which granted appellant and appellee, Donald J. Anthan, a divorce, as well as made certain orders regarding premarital property and the division of marital property and debt.
 {¶ 2} On October 18, 2001, appellee filed a complaint for divorce against appellant. On November 1, 2001, appellant filed an answer and counterclaim with request for restraining order. Appellee filed a reply to counterclaim and objection to request for restraining order on November 2, 2001. On November 5, 2001, the trial court granted appellant's request for a temporary restraining order.
 {¶ 3} On February 7, 2002, appellant filed a motion for attorney fees and costs and a request for oral hearing. On March 18, 2002, appellant filed another motion for attorney fees and sanctions. Appellee filed an objection as well as a motion for attorney fees and sanctions on March 20, 2002. A hearing was held on March 28, 2002. On March 29, 2002, the trial court denied both appellant's and appellee's motions for attorney fees and sanctions.
 {¶ 4} A bench trial commenced on August 22, 2002. On September 3, 2002, appellant filed a motion for order to show cause. On September 16, 2002, appellee filed an objection as well as a motion for attorney fees. After a hearing, the court denied appellant's and appellee's motions on October 3, 2002. Appellee filed his proposed findings of fact and conclusions of law on October 3, 2002, and appellant filed hers, along with a request for hearing on attorney fees, on October 4, 2002. On October 7, 2002, the trial court denied appellant's request for attorney fees.
 {¶ 5} The facts emanating from the record are as follows: appellant and appellee first met each other in September 1997. According to appellee, appellant was hired as an assistant worker by his secretary, Deborah Hamper, when he was employed at Cleveland State University ("CSU"). Appellant stated that she left that job in late November 1997, at the request of appellee, so that they could start dating each other. Appellee, on the other hand, testified that he did not encourage appellant to quit. Appellee stated that appellant decided to leave her job at CSU on December 15, 1997, and they began dating on that date.
 {¶ 6} According to appellee's testimony, he and appellant got married on July 2, 1999. Appellee was employed at CSU for eighteen years, and in June 2001, was hired by Lakeland Community College ("LCC") as the Dean of Engineering. Prior to the marriage, appellant attended Miami University ("Miami") in Oxford, Ohio, where she later graduated in December 1998. After completing her undergraduate degree from Miami, appellee testified that appellant moved into his home, located at 11270 Heath Road, Chesterland, Ohio, 44026, on December 18, 1998. After appellant's graduation, appellee paid appellant's educational debt from Miami in the amount of $3,500 on May 26, 1999, from his Fidelity account.
 {¶ 7} Appellant started law school at CSU in the fall of 2000. During the marriage, appellee testified that he paid for two years of appellant's law school tuition, as well as for her books and other necessary supplies. Appellant applied for and received $12,500 in student loans, to which appellee claimed that he had no knowledge. Appellant's application for financial aid revealed that appellant reported that she had no cash, savings, or checking.
 {¶ 8} Prior to the marriage, in 1990, appellee inherited his parent's home, located at 17645 Lakeport Road, Cleveland, Ohio. Appellee stated that after extensive renovations between 1991 and 1998, he listed the Lakeport Road home for sale in 1999, which eventually sold in June 2000, for $108,000. Appellee testified that he deposited the net proceeds of $108,000 into a joint Metropolitan Bank account on June 19, 2000, and on that same day, transferred $106,000 of the funds into his separate, premarital Fidelity account.
 {¶ 9} According to appellee, he purchased the Heath Road home prior to the marriage on July 7, 1997, which later became the primary residence of the parties, for $340,000. Also, appellee testified that before he married appellant, he owned a 403B account, IRA accounts, Keough Account, State Teachers Retirement Account, AEI Real Estate investment limited partnership, and a Buttes Oil and Gas Income Fund. Appellee stated that Buttes liquidated the account after he lost $4,000, and AEI Real Estate recovered his initial $9,000 investment and paid a slight profit. On the date of the marriage, appellee's net worth was $1,099,309.31. As of July 24, 2002, however, appellee's net worth declined to $724,000. Pursuant to appellee's testimony, his net worth decreased mainly because the stock market declined significantly and because the parties spent $283,000 during the marriage while his earnings only totaled $122,000. Appellee stated that his income was less than usual during the marriage because he had taken a one-year sabbatical to work on his Ph.D. at Case Western Reserve University. Appellee testified that during the marriage, he paid the difference between his income and expenses from his premarital funds.
 {¶ 10} During the marriage, appellee testified that he set up a Metropolitan Bank joint checking account as well as a Fidelity Money Market Fund for appellant's use. Appellee stated that he would deposit money from his premarital accounts into the Metropolitan Bank account whenever the balance would get close to $3,000. According to appellee, appellant wrote checks during the marriage from the Metropolitan Bank account to her Fidelity account totaling $16,436.30, wrote checks to herself totaling $6,120.46, and miscellaneous checks totaling $9,580.88. Also, appellant withdrew cash totaling $1,897.94. Appellee testified that when he and appellant separated, appellant had approximately $22,000 in her Fidelity account. Appellee stated that appellant transferred that money to her premarital PSE account, then immediately transferred those same funds to her sister's, Parmis Darvish ("Parmis"), account in Texas, so that Parmis could purchase a house.
 {¶ 11} According to appellee, although appellant had a wedding band, he gave her $5,000 to purchase a wedding ring when she went to visit relatives in Iran on August 22, 1999. However, appellant did not buy a wedding ring. Instead, appellant wanted to use the $5,000 as well as additional money to purchase an apartment in Iran. Although appellee did not approve of the purchase, he testified that he eventually wrote appellant another check for $2,060 from his Fidelity account on January 24, 2000. Even though appellant sold the apartment in March 2000, and received her original investment of $10,000 back, appellee stated that appellant never repaid him.
 {¶ 12} Appellant and appellee acquired two Persian rugs during the marriage. Pursuant to appellant's testimony, one Persian rug was given to them by her parents as a wedding gift and the other was purchased by appellant with money returned to her from the apartment in Iran. Kevin Slowey ("Slowey"), vice-president of Davidian Oriental Rugs, testified that he was hired by appellee to appraise two Persian rugs. On April 27, 2002, Slowey examined the rugs in appellant's presence at her apartment, located at 1700 East 13th Street, Apartment 3ME, Cleveland, Ohio, 44114. Slowey appraised one rug at $6,200 and the other at $7,000.
 {¶ 13} Appellant and appellee hired Cynthia C. Casto ("Casto"), owner of Lake-Geauga Appraisals, to perform a joint real estate appraisal of the Heath Road residence. On January 7, 2002, Casto performed the appraisal in appellant's presence. Casto testified that the sales comparison analysis supported a value of $365,000 for the house. Casto also performed a retrospective appraisal. As of July 2, 1999, Casto appraised the Heath Road residence at $345,000. Because the deck was still attached to the house and was snow covered, Casto was unable to see any rot or insect damage. However, Casto testified that if she had known that there was rot or insect damage where the deck was connected to the house, her value for the Heath Road home would have been less.
 {¶ 14} According to appellee, he removed the deck from the Heath Road residence in July 2002, after noticing that the siding along the deck line was spongy and rotted. After removing the deck, appellee found carpenter ants, aphids, eggs from carpenter ants, and rot. Appellee then hired John Telesz ("Telesz"), a forensic engineer, to examine the Heath Road home. Telesz testified that he saw ant damage, as well as erosion of the sill plate and the rim joist around the rear of the house. Telesz stated that in order to repair the sill plate and rim joist, the home would have to be jacked up, and that other damage commonly results from such a procedure. Telesz's repair estimate was $31,000, which included replacing the deck.
 {¶ 15} Dennis Hughes ("Hughes"), a licensed residential real estate appraiser, was hired by appellee for $300 to reappraise the Heath Road home. On August 5, 2002, Hughes appraised the fair market value of the home at $330,000. Hughes testified that the interior of the home contained many substandard materials and a lot of work was not completed. With respect to the exterior, Hughes stated that he observed rot of the sill plate and perimeter board just above the foundation wall and beneath the sliding glass doors where the deck was once located. According to Hughes, he took the foregoing factors into consideration when he appraised the value of the Heath Road residence.
 {¶ 16} Irandokht Darvish ("Irandokht"), appellant's sister, testified that she began living with appellant and appellee at the Heath Road residence in October 1999. Irandokht stated that she was not required to pay rent or utilities during her stay with the couple.
 {¶ 17} According to appellant, she first had sexual relations with appellee in February 1998. Appellant stated that she permanently moved into the Heath Road residence in December 1998 after she graduated from Miami. Appellant worked for a short time during the marriage as a clerk at Kaufmanns. Appellant testified that appellee's salary greatly improved due to her "pushing" him to interview for the better position at LCC. Pursuant to appellant's answer and counterclaim with request for a temporary restraining order, she claimed that appellee had a .45 caliber handgun at the home, threatened her on numerous occasions with physical abuse, and on one occasion with death. Besides being in fear of her safety, appellant alleged that appellee had been dissipating funds since early May 2001, and that she could not financially sustain herself.
 {¶ 18} On October 7, 2002, the trial court denied appellant's request for attorney fees as being not timely filed. The trial court entered its findings of fact and conclusions of law, as well as its judgment entry granting the parties a divorce, on October 8, 2002, and a nunc pro tunc judgment entry on October 23, 2002, which additionally ordered appellant to pay appellee the sum of $7,000. Appellant timely filed the instant appeal and raises the following assignments of error:
 {¶ 19} "[1.] [Appellant] was unjustly prevented from properly prosecuting her case against [appellee] by the trial [c]ourt.
 {¶ 20} "[2.] The trial court erred in not addressing [appellant's] claim that [appellee] committed numerous acts of financial and other misconduct.
 {¶ 21} "[3.] The trial court committed reversible error by not discussing nor distributing the entirety of disputed personal and real property in an equitable fashion as required by [R.C.]3105.171(B).
 {¶ 22} "[4.] The trial court erred in allowing the admission into evidence of testimony regarding a reappraisal of the Heath Road marital home and alleged structural damage.
 {¶ 23} "[5.] The lower court erred by not applying an equitable de facto marriage date for division of property purposes[.]
 {¶ 24} "[6.] The trial court committed error when it prevented [appellant] from introducing any evidence regarding mental, emotional and physical abuse that she suffered during the marriage.
 {¶ 25} "[7.] The trial court committed error in allowing testimony from [Hughes] regarding the operability of certain marital items.
 {¶ 26} "[8.] The trial court committed error by not allowing for the admission of notarized affidavits of [appellant's] parents.
 {¶ 27} "[9.] The trial court erred in finding that [appellant] committed financial misconduct.
 {¶ 28} "[10.] The trial court erred in not providing for spousal support or [a] distributive award to [appellant]."
 {¶ 29} In her first assignment of error, appellant argues that the trial court unjustly prevented her from prosecuting her case against appellee due to the trial court's consistent refusal to award her attorney fees and costs, even after it was aware that she could not afford to continue prosecuting the case without such support.
 {¶ 30} This court stated in Kalia v. Kalia, 11th Dist. No. 2001-T-0041, 2002-Ohio-7160, at ¶ 50, that: "`[t]he general rule is that the decision whether to award attorney fees is a matter within the sound discretion of the trial court. In the absence of a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court.' Frederick v. Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458 * * *, at 25, citing Birath v. Birath (1988), 53 Ohio App.3d 31, 39."
 {¶ 31} "`The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 32} R.C. 3105.18(H) provides that: "[i]n divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 33} In the case at bar, although appellant contends that she was unable to effectively prosecute this case, she had legal representation throughout the entire divorce proceedings, including the final three-day trial and the instant appeal. The record shows that appellee paid for all of the appraisals, paid appellant temporary support in the amount of $1,000 per month, as well as paid for two years of her tuition at CSU. Also, appellant received $12,500 in loan proceeds as financial aid even though appellee continued to pay her tuition during the divorce proceedings. According to appellant's testimony, she transferred $21,800 from her Fidelity account to her sister's, Parmis's, bank account in Texas, on September 25, 2001. As such, the foregoing evidence supports the conclusion that appellant had sufficient funds to pay for the pursuit of her case, and that she was, in fact, effectively represented by counsel throughout the entire proceedings.
 {¶ 34} Appellant stresses that the trial court decided not to hear any arguments regarding her request for attorney fees until the final trial. However, at the final trial, appellant failed to present any testimony or evidence that she could not afford legal representation or that she was unable to effectively prosecute her case due to a lack of monetary funds. Also, appellant failed to present any testimony or evidence with respect to the amount of her attorney fees or whether the fees were reasonable. The trial ended on August 26, 2002, and appellant requested a hearing for attorney fees on October 4, 2002. However, the trial court, pursuant to its October 7, 2002 judgment entry, denied appellant's request as not being timely filed, since she failed to quantify any request for fees with sufficient evidence at the time of the trial. Therefore, based on Kalia, supra, and R.C.3105.18(H), the trial court did not abuse its discretion by refusing to award attorney fees to appellant. Thus, appellant's first assignment of error is without merit.
 {¶ 35} In her second assignment of error, appellant contends that the trial court erred in not addressing her claim that appellee committed numerous acts of financial and other misconduct.
 {¶ 36} R.C. 3105.171(E)(3) states that: "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 37} In Hvamb v. Mishne, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, at ¶ 14-15, this court stated that: "[a] trial court enjoys broad discretion in deciding whether or not to compensate one spouse for the financial misconduct of the other.Lassiter v. Lassiter, 1st Dist. No. C-010309, 2002-Ohio-3136. The term `abuse of discretion' connotes more than an error of law or judgment and indicates that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore, [supra]. The burden of proving financial misconduct is on the complaining spouse. Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815." (Parallel citations omitted.)
 {¶ 38} In the instant matter, the evidential material in the record does not support the notion that appellee engaged in financial misconduct. Appellee had no legal obligation to share any of his premarital assets with appellant. See, generally, R.C.3105.171(A)(6)(a). With respect to the marital funds earned during the marriage, the evidence presented shows that appellee shared this income with appellant. Prior to the marriage, appellee paid appellant's $3,500 premarital educational debt. During the marriage, appellee paid two years of appellant's law school tuition as well as books and other supplies. The parties spent $283,000 while appellee's earnings only totaled $122,000 since he was on a one-year sabbatical. Appellee set up a Metropolitan Bank joint checking account and a Fidelity Money Market Fund for appellant's use.
 {¶ 39} Also, based on the facts presented, the removal of the deck by appellee from the Heath Road home does not amount to financial misconduct. Appellee testified that he removed the deck because there was substantial rot and ant damage where the deck was attached to the house. The damage was confirmed by forensic engineer Telesz as well as by appraiser Hughes.
 {¶ 40} Furthermore, during the divorce proceedings, the sale of the one stock by appellee, the proceeds of which remained in his brokerage account, does not rise to the level of financial misconduct. Although appellee removed some separate and personal items from the Heath Road residence, he provided a list of the items to appellant's counsel so that she could have the items appraised, however, appellant failed to do so. Appellee's $200 contribution to the United Way on October 8, 2001, and a $500 contribution to the Citizens of Lakeland Community College on November 6, 2001, do not amount to financial misconduct. The complaint for divorce was not filed until October 18, 2001, and the November 5, 2001 temporary restraining order of assets had not yet been served upon appellee when he made his November 6, 2001 contribution. Also, the $200 withdrawal from the Metropolitan Bank joint checking account was not improper since appellant failed to establish the date of the transaction.
 {¶ 41} As such, appellant did not meet her burden of proving financial misconduct pursuant to Gallo, supra. Therefore, based on Hvamb, supra, the trial court's failure to address appellant's claim of financial misconduct against appellee does not rise to the level of an abuse of discretion. Thus, appellant's second assignment of error is without merit.
 {¶ 42} In her third assignment of error, appellant alleges that the trial court committed reversible error by not discussing nor distributing the entirety of disputed personal and real property in an equitable fashion as required by R.C. 3105.171(B). Appellant stresses that the trial court abused its discretion in not dividing, let alone dividing equitably, appellee's retirement, cash, and stock accounts, and her interest in the Heath Road and Lakeport Road homes as well as "many more items." Appellant argues that the trial court's abuse of discretion is rooted in its unwillingness and inability to determine what property is "marital property."
 {¶ 43} A division of marital property need not be equal, but it must be equitable. Cherry v. Cherry (1981),66 Ohio St.2d 348.
 {¶ 44} R.C. 3105.171 provides that:
 {¶ 45} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. * * *
 {¶ 46} "(C)(1) * * * If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 {¶ 47} "* * *
 {¶ 48} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 49} "(1) The duration of the marriage;
 {¶ 50} "(2) The assets and liabilities of the spouses;
 {¶ 51} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 52} "(4) The liquidity of the property to be distributed;
 {¶ 53} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 54} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 55} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 56} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 57} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 58} In the case sub judice, pursuant to its nunc pro tunc judgment entry on October 23, 2002, the trial court, at paragraph twelve, clearly defined and divided the marital property in which appellant received items totaling $12,000, and appellee received items worth $11,705. With respect to appellee's retirement, cash, and stock accounts, the trial court stated in its October 8, 2002 findings of fact and conclusions of law that "[t]here is no evidence that any overall marital equity resulted from the investments and retirement accounts." Although not specifically mentioned, presumptively this statement included appellee's State Teachers Retirement System account. However, appellant did not specifically assign this as error. We must also stress that there was credible evidence that appellee's net worth substantially decreased by approximately $375,000 during the marriage.
 {¶ 59} Prior to the marriage, appellee inherited the Lakeport Road residence from his parents as well as purchased the Heath Road home for $340,000. With respect to the Lakeport Road home, whatever improvements appellant allegedly made constituted a premarital exercise. The Lakeport Road property was sold during the marriage for $108,000, the proceeds of which were deposited by appellee into a joint checking account due to convenience. Appellee then immediately withdrew and deposited $106,000 from the sale of the Lakeport Road home into his personal premarital Fidelity Investment account. The Heath Road home was appraised by Hughes at $330,000, ten thousand dollars less than appellee's original purchase price, due to the finding of rot and insect damage. As such, the trial court fairly determined that there was no evidence presented to establish any appreciation attributable to the marriage to either residence. In this sense, there was no marital equity to divide between the parties. Therefore, pursuant to R.C. 3105.171, the trial court properly determined and divided the marital property in an equitable manner between appellant and appellee. Appellant's third assignment of error is without merit.
 {¶ 60} In her fourth assignment of error, appellant argues that the trial court erred in allowing the admission into evidence of testimony regarding a reappraisal of the Heath Road marital home and alleged structural damage a few weeks before trial, after an earlier joint appraisal was conducted.
 {¶ 61} In Furness v. Pois (Dec. 22, 2000), 11th Dist. No. 99-P-0014, 2000 Ohio App. LEXIS 6120, at 6, this court stated that: "[w]e are mindful that when reviewing rulings concerning the admissibility of expert testimony, the admissibility of such evidence is entrusted to the sound discretion of the trial court.McKinney v. Schlatter (1997), 118 Ohio App.3d 328, 338. * * * Thus, the judgment of the trial court will not be disturbed absent an abuse of discretion. Mahan [v. Bethesda Hosp., Inc.
(1992), 84 Ohio App.3d 520,] 525." (Parallel citations omitted.)
 {¶ 62} In the instant matter, based on the evidence presented, Casto, Telesz, and Hughes were all qualified to testify as experts pursuant to Evid.R. 702. Unaware of any rot or insect damage on January 7, 2002, Casto's joint appraisal of the Heath Road residence supported a value of $365,000. In July 2002, after noticing that the siding along the deck line was spongy and rotted, appellee removed the deck and discovered the damage. At that time, appellee hired Telesz to examine the home, who estimated that total repairs would cost $31,000, including the replacement of the deck. After gaining the foregoing knowledge of insect and rot damage, appellee hired Hughes to reappraise the Heath Road home. On August 5, 2002, Hughes appraised the fair market value of the home at $330,000.
 {¶ 63} At the trial, appellant's counsel argued that Telesz and Hughes should be prevented from testifying because appellant did not have the opportunity to have the residence independently reappraised. Although the trial court brought up the possibility of a continuance, appellant's counsel twice stated that appellant was not asking for a continuance. The trial court offered appellant the opportunity to continue the trial in order to allow appellant to further investigate the probable testimony of Telesz and Hughes as well as the ant and rot damage. However, appellant refused the continuance. We believe that a reappraisal was justified after appellee discovered ant and rot damage to the Heath Road home, which was previously undetected. As such, the trial court did not abuse its discretion by permitting Telesz and Hughes from testifying as expert witnesses pursuant to Furness, supra. Thus, appellant's fourth assignment of error is without merit.
 {¶ 64} In her fifth assignment of error, appellant contends that the trial court erred by not applying an equitable de facto marriage date for division of property purposes.
 {¶ 65} R.C. 3105.171(A)(2) provides that:
 {¶ 66} "`During the marriage' means whichever of the following is applicable:
 {¶ 67} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 {¶ 68} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. * * *"
 {¶ 69} In the case at bar, both appellee and appellant testified that appellant moved into the Heath Road residence on December 18, 1998, after she graduated from Miami. On July 2, 1999, less than seven months later, appellee and appellant got married. In its October 8, 2002, findings of fact and conclusions of law, the trial court stated that "[t]he term `during the marriage' should be defined as the period from July 2, 1999, to the date of trial, August 22, 2002." We agree. Pursuant to R.C.3105.171(A)(2), the trial court did not abuse its discretion by using the ceremonial marriage date in order to equitably determine marital property. Thus, appellant's fifth assignment of error is without merit.
 {¶ 70} In her sixth assignment of error, appellant alleges that the trial court erred when it prevented her from introducing any evidence regarding mental, emotional, and physical abuse that she suffered during the marriage.
 {¶ 71} Evid.R. 104(A) provides that: "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court * * *."
 {¶ 72} In Ryser v. Conrad (Dec. 7, 2001), 11th Dist. No. 2001-T-0034, 2001 Ohio App. LEXIS 5450, at 4, this court stated that: "[a] trial court's ruling as to the admission or exclusion of testimony is within its broad discretion and will not be disturbed absent an abuse of discretion. Miller v. Bike AthleticCo. (1998), 80 Ohio St.3d 607 * * *." Based on Evid.R. 104(A), this court further stated: "[t]he admission or exclusion of evidence rests within the sound discretion of a trial court." Id. at 7.
 {¶ 73} In the case sub judice, at the very beginning of the trial, appellee denied ever physically abusing appellant. Appellant's counsel objected, and the trial court sustained the objection. The trial court then stated the following: "* * * the pleadings in this case include grounds of incompatibility, which has been admitted by both of the parties. As a consequence this [c]ourt hereby determines that incompatibility is the grounds for divorce of these two persons, and it is hereby determined by the [c]ourt that each will be granted a divorce on grounds of incompatibility. I am therefore not interested in grounds anymore. Move on." Further into the trial, appellant sought to describe how appellee behaved towards her, with respect to the alleged abuse, when they were married. However, the trial court stated that: "[we have] already ruled that [appellant and appellee] are going to be divorced on grounds of incompatibility with respect to each of them based on the pleadings. What would be the relevance of any further testimony as it relates to grounds?" We agree. Pursuant to Ryser, supra, and Evid.R. 104(A), the trial court did not abuse its discretion by preventing appellant from introducing evidence regarding the alleged abuse that she suffered during the marriage. Therefore, appellant's sixth assignment of error is without merit.
 {¶ 74} In her seventh assignment of error, appellant alleges that the trial court erred in allowing Hughes, the reappraiser, to testify regarding the operability of the air conditioning system, when such admission clearly violates the rules against hearsay.
 {¶ 75} Evid.R. 801(C) provides that: "`[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 76} In the instant case, on direct examination, counsel for appellee asked Hughes whether or not there was a problem with the air conditioning system. Hughes replied, "I was told it was not functioning." Appellant's attorney objected, and the trial court overruled the objection. We believe that the objection should have been sustained because it invites the possibility of hearsay. However, we must stress that on cross-examination, counsel for appellant asked Hughes if appellee told him that the air conditioning system did not work and Hughes again answered in the affirmative. As such, appellant's attorney elected to delve further into the source of this particular testimony.
 {¶ 77} There was no evidence submitted that supports the notion that Hughes took into consideration what appellee had told him with respect to the operability of the air conditioning system in arriving at his appraisal of the Heath Road residence. Therefore, while Hughes's testimony might constitute impermissible hearsay under Evid.R. 801(C), appellant was not prejudiced by its admission. See Harrow v. Harrow (Jan. 15, 1988), 11th Dist. No. 3674, 1988 Ohio App. LEXIS 84, at 4. Therefore, any error, if at all, was harmless at best. Thus, appellant's seventh assignment of error is without merit.
 {¶ 78} In her eighth assignment of error, appellant contends that the trial court erred by not allowing for the admission of notarized affidavits of her parents. Appellant stresses that the affidavits would have revealed that her parents live in Iran and could not appear at the trial. Also, appellant argues that the trial court failed to even view the affidavits in order to determine whether they complied with Evid.R. 902(3).
 {¶ 79} Evid.R. 902 states:
 {¶ 80} "(3) Foreign public documents
 {¶ 81} "A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (a) of the executing or attesting person, or (b) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. * * * If a reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification."
 {¶ 82} In the case at bar, the trial court did not admit the affidavits of appellant's parents and stated that: "[t]here is no circumstances under which that's admissible. If you wanted to have a commissioner appointed to take testimony from people in Iran, I suppose you could have done that, but you didn't. This is not admissible under any circumstances." We agree. The affidavits at issue are not public documents. Thus, Evid.R. 902(3) is not applicable. Therefore, appellant's eighth assignment of error is without merit.
 {¶ 83} In her ninth assignment of error, appellant argues that the trial court erred in finding that she committed financial misconduct.
 {¶ 84} As previously addressed in appellant's second assignment of error, "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C.3105.171(E)(3).
 {¶ 85} We disagree with the trial court that appellant committed financial misconduct regarding two instances. Based on the evidence presented, appellee did not pay for the last year of appellant's tuition. As such, appellant still owes $12,500 on the loan, which remains her sole responsibility. Thus, appellant did not receive a bonus of $12,500. Second, the $7,000 given to appellant by appellee to buy a wedding ring was a gift made during the marriage. See, generally, Gauden v. Conrad (Nov. 17, 1989), 11th Dist. No. 1946, 1989 Ohio App. LEXIS 4298. It is irrelevant that she instead used the money to buy an apartment in Iran. With respect to appellant's transfer of $21,800 from her Fidelity account to her sister, Parmis, in Texas, the evidence was conflicting and insufficient to determine whether or not any of the funds in appellant's Fidelity account were marital. Therefore, pursuant to R.C. 3105.171(E)(3), the trial court abused its discretion by determining that appellant committed financial misconduct. Thus, appellant's ninth assignment of error is with merit.
 {¶ 86} In her tenth assignment of error, appellant alleges that the trial court erred in not providing her with spousal support or a distributive award.
 {¶ 87} R.C. 3105.18 provides that:
 {¶ 88} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171
* * *, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party. * * *
 {¶ 89} "* * *
 {¶ 90} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, * * * the court shall consider all of the following factors:
 {¶ 91} "(a) The income of the parties, from all sources * * *;
 {¶ 92} "(b) The relative earning abilities of the parties;
 {¶ 93} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 94} "(d) The retirement benefits of the parties;
 {¶ 95} "(e) The duration of the marriage;
 {¶ 96} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 97} "(g) The standard of living of the parties established during the marriage;
 {¶ 98} "(h) The relative extent of education of the parties;
 {¶ 99} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 100} "(j) The contribution of each party to the education, training, or earning ability of the other party * * *;
 {¶ 101} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience * * *;
 {¶ 102} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 103} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 104} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 105} In the instant case, pursuant to R.C. 3105.18(B), the trial court awarded temporary spousal support to appellant in the amount of $1,000 per month. However, appellant never formally requested nor argued for permanent spousal support. Rather, at the trial, appellant merely mentioned the amount of her tuition as a basis that she is entitled to some spousal support. After considering appellant's request and after determining the division or disbursement of property under R.C. 3105.171, the trial court determined, pursuant to R.C. 3105.18(B), that neither party should pay spousal support to the other.
 {¶ 106} In support of its determination to not award either party spousal support, the court considered the pertinent factors under R.C. 3105.18(C)(1). In its findings of fact and conclusions of law, the trial court specifically determined the following: that the duration of the marriage was from July 2, 1999 to August 22, 2002; no children were born during the marriage; appellee was born on February 16, 1955 and appellant was born on August 6, 1968; the income and retirement benefits of the parties; the relative assets and liabilities of the parties; appellant committed financial misconduct; and that appellant failed to present any evidence as to her living expenses or that she was unable to work and support herself. Thus, the trial court did not abuse its discretion by failing to award spousal support to appellant. Therefore, appellant's tenth assignment of error is without merit.
 {¶ 107} For the foregoing reasons, appellant's first through eighth assignments of error and appellant's tenth assignment of error are not well-taken. Appellant's ninth assignment of error has merit. The judgment of the Geauga County Court of Common Pleas is affirmed in part, and with respect to the ninth assignment, is reversed in part, and judgment is hereby entered for appellant on the ninth assignment of error.
Christley and O'Neill, JJ., concur.