OPINION
{¶ 1} Appellant, David J. Osborn, appeals from a judgment entry of the Trumbull County Court of Common Pleas, Domestic Relations Division, granting him a divorce from appellee, Holly Osborn, and dividing the parties' assets. For the following reasons, we affirm in part, reverse in part, and remand this matter.
 {¶ 2} By way of background, appellant and appellee were married on October 6, 1984. No children were born as issue of the marriage.
 {¶ 3} On January 4, 2002, appellee filed a complaint for legal separation in the Trumbull County Court of Common Pleas, Domestic Relations Division. The complaint alleged that the parties were incompatible and, therefore, entitled to a legal separation. Appellant countered by filing an answer and counterclaim. The counterclaim requested a divorce, asserting the parties' incompatibility.
 {¶ 4} Thereafter, on November 27, 2002, a hearing was held to resolve the parties' claims and determine an equitable distribution of their property. During the hearing, evidence relating to the following property items was disclosed: (1) real estate property located at 440 Kenilworth Road, Warren, Ohio; (2) appellant's pension; (3) a bank account withdrawal of $9,500; and (4) a bank account withdrawal of $1,500.
 {¶ 5} First, with respect to the real estate property, testimony revealed that, prior to the parties' marriage, appellant resided with his first wife at 440 Kenilworth Road, Warren, Ohio. The deed to the home named appellant and his first wife as joint owners.
 {¶ 6} Following a divorce from his first wife, appellant married appellee. Appellant's first wife, however, continued to reside at the 440 Kenilworth property. Appellant testified that, during the parties' marriage, it was his funds which paid for the mortgage, taxes, insurance, and maintenance of the real estate. Appellee, however, testified that she also contributed to the payment of the real estate's expenses.
 {¶ 7} In 1991, the mortgage principal on the real estate was paid in full and a quitclaim deed was executed, naming appellant as the sole owner of the real estate. Appellant's first wife moved from the home, and appellant began to rent out the residence.
 {¶ 8} In 1996, appellant had a heart attack. Appellant testified that his health problems initiated various estate planning actions. As part of appellant's estate planning, he executed another quitclaim deed which named appellant and appellee as joint owners of the real estate, with a survivorship interest. This deed remained in effect at the initiation of the divorce.
 {¶ 9} Next, testimony disclosed that appellant was a participant in his employer's pension plan. Appellant's participation in the pension plan began at the start of his employment and continued until his retirement on November 1, 1999. When appellant retired, he elected a 65 percent Joint and Survivor form of pension benefit. There was no testimony provided as to the total value of the pension. However, a posthearing joint exhibit filed with the trial court estimated the portion of the pension accumulated during the parties' marriage was valued at $155,532.91.
 {¶ 10} The evidence also established that the parties maintained a joint bank account with Credit Union One. As of June 30, 2001, there was $14,044.66 in the joint account. On September 28, 2001, appellant withdrew $11,958.71 from the joint account and transferred these funds to a bank account which was established solely under his name. The $11,958.71 represented the initial balance of appellant's newly established personal account. Appellant testified he then withdrew $9,500 from his personal account and spent this money on gambling and marital bills.
 {¶ 11} Furthermore, on November 15, 2001, appellant withdrew an additional $1,500 from his personal account. Appellant testified that he used the $1,500 to purchase a television and entertainment center. He further stated that he retained the television and entertainment center subsequent to the initiation of the divorce proceedings.
 {¶ 12} After the hearing, the trial court issued a July 22, 2003 judgment entry, granting the parties a divorce, awarding appellee spousal support, and dividing the parties' assets. The court made the following findings of fact and determinations with respect to the aforementioned property items at issue.
 {¶ 13} The trial court found that, prior to his marriage to appellee, appellant owned the real estate located at 440 Kenilworth. The court determined that, during the parties' marriage, marital funds were expended to maintain the property and reduce the mortgage. Thus, the court concluded that the real estate was marital property. Furthermore, the court found at "some time during the marriage [appellant] deeded the property to [appellant] and [appellee] and that property therefore become [sic] marital." As a result of these findings, the court awarded appellant possession of the real estate and awarded appellee a one-half interest of $53,000, which was the appraised value of the residence.
 {¶ 14} With respect to appellant's pension, the court concluded, "[t]he marital portion of [appellant's] pension plan shall be equally divided by Qualified Domestic Relations Order. The coverture portion shall be defined as being from the October 6th, 1984 marriage date through and including [appellant's] retirement date."
 {¶ 15} The court then made findings with respect to appellant's withdrawals from his personal account. Specifically, the court determined appellant had "made a withdrawal of $9,500 on 9/28/01 from a marital account at Credit Union One. He claims that he paid some bills with some of this money but adds that he gambled most of it away without [appellee's] knowledge. He could produce no receipts or verification as to bill payments and the Court finds that [appellant] committed financial misconduct in wasting this marital asset and owes [appellee] her one-half share or $4,750.
 {¶ 16} "The Court finds further that [appellant] withdrew $1,500 from this account on November 15th, 2001. He states that with this money he purchased the TV and an entertainment center which remain in his possession. The Court finds that since he expended marital funds for property he now holds that he owes [appellee] her one-half share or $750."
 {¶ 17} From this judgment, appellant has filed a timely notice of appeal and now sets forth the following four assignments of error for our consideration:
 {¶ 18} "[1.] The trial court committed prejudicial error toward appellant-husband and abused its discretion in finding that the property located at 440 Kenilworth, Warren, Ohio was marital property.
 {¶ 19} "[2.] The trial court committed prejudicial error towards appellant-husband and abused its discretion in not including the `excess' survivorship value in the division of the marital protion [sic] of appellant-husband's pension.
 {¶ 20} "[3.] The trial court committed prejudicial error towards appellant-husband and abused its discretion in finding that appellant-husband dissipated certain marital funds in the sum of $9,500, and furthermore, erred in ordering a distributive award in the full amount of said funds.
 {¶ 21} "[4.] The trial court committed prejudicial error towards appellant-husband and abused its discretion in the division of the parties' household goods and furnishings."
 {¶ 22} We will first set forth the general standard of review which is applicable to each assignment of error. A trial court is given broad discretion in its division of marital assets. Cherryv. Cherry (1981), 66 Ohio St.2d 348, paragraph two of the syllabus. Accordingly, as a reviewing court, our inquiry is limited to whether the trial court abused that discretion.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 23} Under his first assignment of error, appellant argues that the trial court erred in determining that the real estate property located at 440 Kenilworth was marital property. In doing so, appellant submits two separate issues for our review. First, appellant contends the court erred in making the factual determination that he applied the parties' marital funds to various house payments, thereby transforming the real estate into marital property. Second, appellant maintains that his execution of a joint survivorship deed with appellee failed to establish his donative intent and, therefore, the real estate remained his separate property.
 {¶ 24} The initial issue before us is whether the 440 Kenilworth real estate was marital property or separate property. To assist in our review, the applicable definitions of marital property and separate property are necessary. Pursuant to R.C.3105.171(A)(3)(a)(i), marital property is defined as "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage[.]" Marital property, however, does not include any separate property. R.C. 3105.171(A)(3)(b).
 {¶ 25} On the other hand, separate property is defined by R.C. 3105.171(A)(6)(a)(ii) as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."
 {¶ 26} That being said, if commingled marital funds were used to pay the real estate's expenses, the real estate was properly considered marital property subject to an equitable division. It is axiomatic that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separateproperty is not traceable." (Emphasis added.) R.C. 3105.171
(A)(6)(b). See, also, Woods v. Woods (Apr. 7, 1995), 11th Dist. No. 93-G-1835, 1995 Ohio App. LEXIS 1458, at 7. "The party attempting to prove that the asset is traceable separate property must establish such tracing by a preponderance of the evidence."Price v. Price, 11th Dist. No. 2000-G-2320, 2002-Ohio-299, 2002 Ohio App. LEXIS 240, at 5.
 {¶ 27} Here, appellant failed to provide any evidence corroborating his claim that only his funds were used to pay for the mortgage, taxes, insurance, and maintenance of the real estate. The testimony at trial established that, following the parties' marriage, on October 6, 1984, mortgage payments on the 440 Kenilworth property were still being made as appellant's first wife was residing at the house. In 1991, the mortgage payments were completed, but expenses relating to taxes, insurance, and maintenance continued. Contrary to appellant's testimony, appellee testified that she also contributed funds relating to the real estate's expenses.
 {¶ 28} It was appellant's burden to trace the funds used to pay for the real estate and establish, by a preponderance of the evidence, that his separate property was not commingled with marital property. Appellant failed to present any substantive evidence establishing an adequate trace of funds. Thus, the trial court did not abuse its discretion in finding the 440 Kenilworth property to be marital property and dividing it equally between the parties. This portion of appellant's first assignment of error is not welltaken.
 {¶ 29} Moreover, once the mortgage payments were complete, appellant became the sole owner of the real estate via a quitclaim deed. Nevertheless, following his heart attack, appellant executed a new deed which named himself and appellee as joint owners, with a right of survivorship. Appellant argues that, despite the execution of the joint survivorship deed with appellee, the real estate remained his separate property. In support of this contention, appellant maintains he executed the joint survivorship deed for estate planning purposes and did not have donative intent. We disagree.
 {¶ 30} Under R.C. 3105.171(H), "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." Thus, we must examine the surrounding circumstances to determine whether appellant's execution of a joint survivorship deed transformed the real estate into marital property.
 {¶ 31} "[S]pouses can change separate property to marital property based on actions during the marriage." Moore v. Moore
(1992), 83 Ohio App.3d 75, 77. The primary method for effecting this change is through an inter vivos gift of the property from the donor spouse to the donee spouse. Helton v. Helton (1996),114 Ohio App.3d 683, 685. "[A]n inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another." Smith v. Schafer (1993),89 Ohio App.3d 181, 183. The essential elements of an inter vivos gift are:
 {¶ 32} "(1) [the] intent of the donor to make an immediate gift; (2) delivery of the property to the donee; [and] (3) acceptance of the gift by the donee." Barkley v. Barkley
(1997), 119 Ohio App.3d 155, at fn.2.
 {¶ 33} Generally, the donee has the burden of showing, by clear and convincing evidence, that the donor made an inter vivos gift. Smith at 183. However, "`[w]hen a transaction is made that benefits a family member, there is a presumption that the transaction was intended as a gift.'" Davis v. Davis, 5th Dist. No. 2003CA00243, 2004-Ohio-820, at ¶ 8, quoting Wertz ex rel.Estate of Jurkoshek v. Tomasik (Feb. 7, 2001), 9th Dist. No. 20209, 2001 Ohio App. LEXIS 426.
 {¶ 34} First we note, "[a] joint survivorship deed transfers a present undivided one-half interest and not merely an expectancy of future interest." Gills v. Gills (Dec. 23, 1994), 11th Dist. Nos. 93-L-191 and 93-L-194, 1994 Ohio App. LEXIS 5844, at 5. Thus, appellant's transfer of an ownership interest was immediate upon his execution of the joint survivorship deed.
 {¶ 35} Furthermore, "the fact that appellant caused the property to be titled jointly with the right of survivorship is highly probative in determining his intent." Id. Although appellant argues that there was no donative intent, his testimony at the hearing is contradictory to this argument, to wit:
 {¶ 36} "Q: You in fact, gave a gift to your wife for [the 440 Kenilworth real estate]?
 {¶ 37} "A: I wouldn't necessarily call it a gift. We were both concerned that we were, having medical problems for my own and if I happened to die what would become of this property.
 {¶ 38} "Q: And you wanted it to go to [appellee]?
 {¶ 39} "A: Well in case of my being deceased, yes.
 {¶ 40} "Q: So it was placed in a joint deed with the two of you correct?
 {¶ 41} "A: Yes, sir."
 {¶ 42} The foregoing testimony clearly demonstrates that it was appellant's ultimate and sole intent to gift a one-half interest in the real estate to appellee. It is irrelevant that appellant's donative intent was the result of his estate planning. His own testimony establishes that when the joint survivorship deed was executed he intended to make an immediate, voluntary, gratuitous and irrevocable transfer of a one-half interest in the real estate to appellee.
 {¶ 43} Accordingly, there was clear and convincing evidence that appellant made an inter vivos gift via his execution of a joint survivorship deed for the property located at 440 Kenilworth. Appellant has failed to overcome the presumption that his transfer of a one-half interest in the property to appellee was a gift. Therefore, for this additional reason, the trial court did not abuse its discretion via its equitable division of the real estate, as such property was marital property. Appellant's first assignment of error is without merit.
 {¶ 44} Under his second assignment of error, appellant argues that the trial court erred in failing to adjust its division of his pension benefits in accordance with his election of a 65 percent joint and survivorship annuity. Specifically, appellant states that his election of a 65 percent joint and survivorship annuity, rather than the typical 50 percent joint and survivorship annuity, reduced his pension benefits and increased appellee's survivorship benefits. Thus, appellant concludes that the trial court was required to offset appellee's "excess" survivorship benefits against its division of appellant's present pension benefits.
 {¶ 45} "In general, pension and retirement benefits acquired by a spouse during the marriage are deemed marital assets that are subject to division." Neville v. Neville,99 Ohio St.3d 275,2003-Ohio-3624, at ¶ 6. In the instant case, the trial court ordered the parties to divide the marital portion of appellant's pension plan equally between the parties. However, the court failed to provide a monetary valuation of the pension.
 {¶ 46} In Willis v. Willis (1984), 19 Ohio App.3d 45, 48, we held that, although a trial court is vested with substantial discretion when determining a property division, a valuation of pension funds is necessary for adequate appellate review. Similarly, in McNulty v. McNulty (Nov. 29, 1996), 11th Dist. No. 96-A-0028, 1996 Ohio App. LEXIS 5400, the trial court merely determined that the husband's future pension benefits were to be divided equally between the parties. Relying upon Willis, we held, "the trial court in this case erred when it did not undertake to assign some value to appellant's pension plan in the equitable property division." (Emphasis sic.) Id. at 4.
 {¶ 47} Here, because the trial court failed to assign a value to the equally divided marital portion of appellant's pension, we are precluded from an adequate appellate review. While a post-hearing exhibit included a valuation of appellant's pension fund, the court failed to give any indication that it was adopting this valuation as a factual finding. Because the valuation of appellant's pension was within the trial court's discretion, this court, on appeal, is prohibited from assigning its own value to the pension. Thus, the trial court's failure to ascertain a valuation of the pension precludes an adequate appellate review. Appellant's second assignment of error is with merit to the limited extent indicated.
 {¶ 48} Under his third assignment of error, appellant argues that the trial court erred in issuing a distributive award to appellee in the amount of $4,750, based upon its erroneous determination that appellant dissipated marital funds in the amount of $9,500.
 {¶ 49} Appellant maintains that the majority of the $9,500 was used to pay for marital expenses.
 {¶ 50} A distributive award represents any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support. R.C.3105.171(A)(1). Pursuant to R.C. 3105.171(E)(3), "if a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 51} A trial court enjoys broad discretion in determining whether a distributive award is necessary to compensate one spouse for the financial misconduct of the other. Anthan v.Darvish-Kojouri, 11th Dist. No. 2002-G-2483, 2004-Ohio-1168, at ¶ 36. Thus, we will apply an abuse of discretion standard. Id. Again, the term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore at 219. The burden of proving financial misconduct is on the complaining spouse. Anthan at ¶ 37.
 {¶ 52} In the case sub judice, the court's judgment entry acknowledges appellant's testimony claiming that he withdrew $9,500 to pay some bills, but gambled most of it away. Despite his claims, the court noted that appellant "could produce no receipts or verification as to bill payments." Thus, the court found appellant had committed financial misconduct.
 {¶ 53} The record before us supports the trial court's determinations. First, the evidence shows that the $9,500 originated from the parties' marital assets. Appellant testified that after he transferred the money from the parties' joint account to his own personal account, and then withdrew the funds, he lost the majority of the $9,500 due to his gambling habit. Nevertheless, appellant continued to testify that a portion of the funds was actually spent on marital bills. Appellant was unable to substantiate his testimony with any evidence of bill payments for marital expenses. Nor was he able to present evidence establishing the use of these funds for gambling.
 {¶ 54} Appellee testified she was unaware of appellant's gambling habit and his expenditure of marital funds to support this habit. She further testified that she was uninformed of appellant's withdrawal of $9,500 from the parties' joint account prior to the divorce proceedings. Such evidence demonstrates that appellee was oblivious to appellant's unauthorized use of the parties' marital funds and further confirms that appellant did not use the funds to pay marital bills.
 {¶ 55} Accordingly, the evidence presented at the hearing established that the trial court did not abuse its discretion by determining appellant had engaged in financial misconduct by his withdrawal and expenditure of $9,500 from the parties' joint account. Appellant's third assignment of error is without merit.
 {¶ 56} Under his fourth assignment of error, appellant contends the trial court erred by ordering him to pay appellee one-half the value of the television and entertainment center. In support of his argument, appellant maintains that the funds used to pay for the television and entertainment center were taken from his personal account and that an award to appellee for half the value of these items was not equitable.
 {¶ 57} First, the evidence produced at the hearing clearly demonstrated the funds used by appellant to pay for the television and entertainment center were marital funds. At the hearing, appellant testified that he withdrew $11,958.71 fromthe parties' joint account and placed these funds into his own personal account. The bank statement demonstrated that the $11,958.71 was the beginning balance of appellant's personal account. Appellant failed to present any evidence that he had deposited any additional funds into his personal account which represent his own separate funds. The bank statement only showed six separate credits to the account in the amount of $22.50, each for dividend payments. Appellant further testified that on November 15, 2001, he withdrew $1,500 from his personal bank account and used these funds to purchase the television and home entertainment center.
 {¶ 58} Accordingly, although appellant withdrew the $1,500 from his personal account, these funds originated from the marital assets of the joint account. Unlike separate property, marital property does not become separate property if it is commingled with separate property. R.C. 3105.171(A)(3)(b). But, c.f., Moore at 77. Thus, we need not determine the traceability of the marital property once it was placed in appellant's personal bank account.
 {¶ 59} In the instant case, the $1,500 expended by appellant clearly represented marital assets, regardless of his withdrawal of these funds from his personal account. Because the television and home entertainment center were purchased with marital funds, the trial court was within its discretion to divide the value of the television and home entertainment center equally between the parties. R.C. 3105.171(C)(1). Appellant's fourth assignment of error is without merit.
 {¶ 60} Based upon the foregoing analysis, appellant's first, third, and fourth assignments of error are without merit. However, appellant's second assignment of error is with merit to the limited extent indicated. Thus, we hereby affirm in part, reverse in part, and remand this matter for the trial court to state its valuation of the pension.
Ford, P.J., Rice, J., concur.