OPINION
{¶ 1} Defendant-appellant, Michelle M. Putman, appeals the division of marital property by the Clermont County Court of Common Pleas, Domestic Relations Division, following her divorce from plaintiff-appellee, J. Lee Putman.
 {¶ 2} Lee and Michelle were married from September 21, 1996 until June 30, 2006. Lee filed his divorce complaint on April 14, 2006. The parties had one child and entered into an agreed order concerning parenting issues. *Page 2 
 {¶ 3} During the course of the marriage, the parties earned a substantial income from their respective jobs at Johnson Johnson. Over the last four years of the marriage, the couple had a gross income of $1,683,065 and an after-tax income of $1,027,600. During that four-year period, Lee earned approximately two-thirds of the couple's income, while Michelle accounted for the remaining one-third.
 {¶ 4} The sole issues for the trial court had to do with the division of the marital property, what constituted marital property, and the issue of attorney fees. At trial, Lee contended that Michelle engaged in financial misconduct beginning in 2002 by gambling away at least $243,730. In response, Michelle urged that her gambling was merely discretionary spending that never exceeded her personal earnings. In its written decision, the lower court found that Michelle engaged in financial misconduct through her gambling activities. The trial court also awarded Lee the residence and all equity in the residence, finding that Lee invested separate premarital assets to purchase the property. Finally, the trial court ordered that each party was responsible for their own respective attorney fees. Michelle timely appeals, raising three assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED IN FINDING FINANCIAL MISCONDUCT ON THE PART OF DEFENDANT/APPELLANT."
 {¶ 7} In her first assignment of error, Michelle disputes the finding of financial misconduct by the trial court. Michelle argues that her gambling did not constitute financial misconduct. Michelle urges that she made a "good income" and the gambling was merely discretionary spending. Michelle alleges that both parties spent frivolously during the marriage and squandered most of their earnings, yet she is being punished for gambling. Michelle contends that it is not financial misconduct to "engag[e] in a perfectly legal activity while using discretionary income." Michelle argues that Lee made twice as much as her, *Page 3 
drove expensive vehicles and has failed to account for his spending. Michelle states "the Trial Court in this case has begun down a very slippery slope of trying to establish what type of leisure activities constitute financial misconduct by engaging in speculation." Michelle argues that the lower court committed an abuse of discretion in finding financial misconduct and requests this court to order an equal division of the marital assets.
 {¶ 8} "The trial court's decision regarding property division will not be reversed absent an abuse of discretion." Hutchinson v.Hutchinson (1996), 113 Ohio App.3d 863,867, citing Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355. Therefore the court's judgment should not be disturbed unless the decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Indeed, where there is "competent, credible evidence to support the trial court's decision, there is no abuse of discretion." Middendorf v.Middendorf, 82 Ohio St.3d 397, 400, 1998-Ohio-403, citing Ross v.Ross (1980) 64 Ohio St.2d 203.
 {¶ 9} R.C. 3105.171(C)(1) states that, generally, the division of marital property shall be equal. However, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." Id.
 {¶ 10} In this case, the trial court found that an equal division of the marital property would be inequitable due to Michelle's financial misconduct. "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(3).
 {¶ 11} Michelle equates her activities to the husband in Mikhail v.Mikhail, 124 Ohio Misc.2d 5, 2003-Ohio-3089. The wife inMikhail alleged that the husband's investment decisions constituted financial misconduct because the decisions were made without her *Page 4 
knowledge or consent. Id. at ¶ 12. The Lucas County Court of Common Pleas found that the husband did not engage in financial misconduct because the transactions began or occurred well before the couple's separation, each transaction was properly documented, the stock purchases were made following research and consultation with investment advisors, and the choices resulted in positive gains despite the post-September 11, 2001 "market crash." Id. at ¶ 17-20.
 {¶ 12} Michelle urges that, like Mikhail, her gambling activities did not constitute financial misconduct because they occurred before the couple's separation. Further, Michelle claims that Lee was aware of and even supported her conduct by accompanying her to the river boat and traveling on two separate occasions to gambling destinations such as Las Vegas and the Bahamas.
 {¶ 13} "An implicit element of financial misconduct is wrongdoing."Mikhail clearly directs that financial misconduct does not exclusively occur following separation. Id. at ¶ 15. Rather, Mikhail notes that "the time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter. * * * [A]ctions diminishing marital assets at the time of the parties' permanent separation could be considered misconduct." Id. at ¶ 16, citing Hammon v. Brown (Sept. 14, 1985), Cuyahoga App. No. 67268. The time frame is merely a factor in determining misconduct.
 {¶ 14} The trial court in this case relied upon Downey v. Downey, Summit App. No. 23687, 2007-Ohio-6294; and Osborn v. Osborn, Trumbull App. No. 2003-T-0111, 2004-Ohio-6476. In Downey, the Ninth Appellate District found that the trial court did not abuse its discretion in finding the husband committed financial misconduct by using money acquired from a second mortgage to pay gambling debts even though the wife also signed the loan documents. 2007-Ohio-6294 at ¶ 19. Similarly, in Osborn, the Eleventh Appellate District found no abuse of discretion where the trial court found the husband engaged in financial *Page 5 
misconduct where the husband used marital funds to support his gambling habit. 2004-Ohio-6476 at ¶ 55.
 {¶ 15} Ample evidence of Michelle's financial misconduct was presented at trial. The trial court in this case held, "in the present case, evidence was presented that Defendant made ATM withdrawals in the total amount of $225,509.58 from various casinos from January of 2002 through June of 2006. In 2005 alone, Defendant withdrew $73,855.93 of marital funds at different casinos. * * * Testimony was further presented that Defendant withdrew funds from her 401(K) to pay for gambling. Further, it is apparent from the record that Defendant's gambling was an issue of contention between the parties. The Court recognizes that both parties had high incomes during the marriage. The Court further recognizes that some of the ATM withdrawals may have been used for other items than actual gambling. However, it is apparent from the record that Defendant withdrew a significant amount of marital funds at different casinos. Based upon the totality of the evidence presented and upon review of relevant case law, the court finds that Defendant engaged in financial misconduct as defined by R.C. 3105.171(E)(3) warranting an unequal division of marital property."
 {¶ 16} Although much of the gambling activity occurred during the marriage, evidence demonstrated that throughout Michelle attempted to conceal the extent of her gambling. Michelle withdrew funds from her 401K account to be used for gambling purposes. In such instances, no matching contributions were made for the six-month period following the withdrawal by her employer as a penalty. Further, Michelle failed to disclose gambling receipts. The parties were audited and, as a result, were required to file an amended tax return to reflect the undisclosed receipts and the 401K withdrawal. Lee had no knowledge of the receipts or withdrawal until the audit. Substantial, undisputed evidence was introduced at trial demonstrating that Michelle continually engaged in deceptive practices regarding her *Page 6 
gambling. Michelle cashed checks from the parties' home equity line-of-credit for gambling purposes; requiring Lee to keep the account "maxed out" to prevent further withdrawals.
 {¶ 17} In her brief, Michelle alleges that Lee is equally guilty of squandering the couple's finances. However, Michelle presented no evidence at trial to support her allegation nor does it excuse her deceptive practices which are supported by the record.
 {¶ 18} Michelle's first assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "THE TRIAL COURT ERRED IN TRACING THE NON-MARITAL PORTION OF THE PARTIES MARITAL RESIDENCE."
 {¶ 21} In her second assignment of error, Michelle argues the trial court erred by failing to award her a portion of the marital equity in the real estate because the court found the residence was nonmarital property purchased entirely by Lee. Michelle claims that Lee failed to sufficiently trace the nonmarital funds and that she is entitled to one-half of the marital equity.
 {¶ 22} A trial court must determine what constitutes marital property and what constitutes separate property in a divorce proceeding.Singh v. Singh, Warren App. No. CA2002-08-080, 2003-Ohio-2372, ¶ 5. The trial court may begin with the presumption that property acquired during the marriage is marital unless evidence is offered to rebut the presumption. Id. at ¶ 6.
 {¶ 23} Marital property includes personal property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a).
 {¶ 24} Separate property includes property acquired by one spouse prior to the date of the marriage, property found by the trial court by clear and convincing evidence to be a gift given to only one spouse, as well as passive income and appreciation acquired from *Page 7 
separate property by one spouse during the marriage. R.C. 3105.171(A)(6)(a).
 {¶ 25} Unless it is part of a distributive award to supplement the division of marital property, a spouse's separate property must be awarded to that spouse. R.C. 3105.171(D); Barkley v. Barkley (1997),119 Ohio App.3d 155, 166.
 {¶ 26} This court reviews a trial court's determination regarding the classification of property as marital under a manifest weight of the evidence standard. Johnson v. Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001. The factual findings of the trial court as to the classification of property as marital are reviewed to determine whether they are supported by competent, credible evidence. Id; Barkley at 159. An appellate court should not reverse the judgment of the trial court unless it appears that the trial court abused its discretion in dividing marital property. Barkley.
 {¶ 27} The parties stipulated that the present value of the home is $580,000. At the time of the divorce, the property was subject to a first and second mortgage in the amounts of $301,000 and $29,410.11, respectively, leaving equity in the amount of $249,589.89.
 {¶ 28} The record reflects that prior to the marriage, both parties owned separate residences. The parties purchased a residence on Nicole Lane for $255,597.10. Evidence was presented at trial that Lee paid $80,297 down on the Nicole Lane property. The funds included $54,088.75 that Lee received from the sale of his premarital residence and $32,000 of other premarital property. At trial, the parties disputed whether Michelle contributed towards the purchase; however, the trial court found "credible testimony was presented that Defendant did not contribute any premarital funds to the purchase of Nicole Lane."
 {¶ 29} In October of 2000, the parties purchased the lot for their current residence on Twin Oaks Drive in Loveland for $174,500. Evidence was presented that Lee sold 2,500 shares of stock options acquired in 1995, prior to the parties' marriage, to pay approximately $114,500 of the price of the lot. The remaining amount for the lot was paid using a second *Page 8 
mortgage on the Nicole Lane property. Additionally, the remaining net proceeds from the sale of Nicole Lane in the amount of $23,862 were paid towards Twin Oaks.
 {¶ 30} Based on this evidence, the trial court held that "undisputed evidence was presented to support a finding that Plaintiff's separate property exceeds the value of the equity in the marital residence. Further, the Court finds that Plaintiff has traced his separate property interest into the marital residence * * *."
 {¶ 31} After a review of the record, we find no abuse by the trial court in awarding the equity in the marital residence to Lee as his separate property.
 {¶ 32} Michelle's second assignment of error is overruled.
 {¶ 33} Assignment of Error No. 3:
 {¶ 34} "THE TRIAL COURT ERRED IN REFUSING TO MAKE AN AWARD OF ATTORNEY'S FEES TO APPELLANT."
 {¶ 35} Michelle argues in her third assignment of error that she is entitled to an award of attorney fees due to the disparity in income between the parties. Michelle submits that her attorney fees total $44,750 while Lee's attorney fees total $27,202.50. Michelle alleges she "was repeatedly required to defend herself from applications for protection orders that turned out to be unfounded." Michelle argues that the trial court committed an abuse of discretion by failing to divide the fees proportionately to the parties' income.
 {¶ 36} The decision to award attorney fees in a divorce action lies within the trial court's sound discretion, and the court's decision will be reversed only if it amounts to an abuse of discretion, i.e., is arbitrary, unconscionable, or unreasonable. See Dunbar v. Dunbar,68 Ohio St.3d 369, 371, 1994-Ohio-509.
 {¶ 37} After a review of the record, we find no abuse by the trial court in requiring each party to be solely responsible for his or her respective attorney fees. No evidence was presented to the trial court to support Michelle's claim that Lee filed unfounded applications *Page 9 
for protection orders.
 {¶ 38} Michelle's third assignment of error is overruled.
 {¶ 39} Judgment affirmed.
 YOUNG and POWELL, JJ., concur. *Page 1