[Cite as *Huynh v. Haskell*, 2013-Ohio-656.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| NHI VIEN HUYNH, | : | CASE NO. CA2012-03-027 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N<br>2/25/2013 |
| - vs - | : | |
| | : | |
| DANNY T. HASKELL, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2010 DRB 1389


Donald W. White, 237 Main Street, Batavia, Ohio 45103, for plaintiff-appellant

Cecelia J. Potts, 750 South High Street, P.O. Box 474, Mr. Orab, Ohio 45154, for defendant-appellee


**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Nhi Vien Huynh (Wife), appeals a judgment of the Clermont County Common Pleas Court, Domestic Relations Division, distributing the parties' property in a divorce action.

{¶ 2} Wife and defendant-appellee, Danny T. Haskell (Husband), were married on December 31, 2008. Wife filed for divorce on August 27, 2010. A magistrate held a hearing

on August 9, 2011, to resolve several issues including the division of monies belonging to Husband, Wife, and Wife's adult daughter, Sandy Nguyen (Sandy). Specifically, the parties were in dispute as to what monies contained in Husband and Wife's accounts belonged to Sandy. As to these issues, Sandy, Wife, and Husband testified at the divorce hearing.

{¶ 3} According to Sandy's testimony, Sandy placed money in her mother's Scottrade account so that Husband could "trade it" and make a profit for Sandy. Sandy stated that all of the money in Wife's Scottrade account belonged to Sandy and had "nothing to do with [Wife] or [Husband.]" Sandy further testified that the money contained in Husband's Scottrade account also belonged to Sandy and that she allowed Husband to borrow this money purportedly for tax purposes. Sandy also referenced emails she received from Husband where he stated that "we can take care of your * * * scottrade [sic] account, it is your money and you know that I will never take your money." Finally, Sandy testified that she also loaned Husband and Wife $40,000, stating that "$30,000 is to pay for the house that they're investing and the $6,000 that [Husband] borrow me [sic] and the $4,000 that [Wife] borrow to pay for the residence."[1]

{¶ 4} Wife testified that the money in her Scottrade account, her Vanguard account, and Husband's Scottrade account all belong to Sandy. Wife further stated that Sandy had loaned the parties $40,000 when Husband was ready to purchase the Georgetown house.

{¶ 5} Finally, Husband testified that Wife had a Vanguard account, a Scottrade account, and a Fidelity account which were in her name only. Husband acknowledged that the funds in Wife's Vanguard account came exclusively from Sandy, that the funds in Wife's Fidelity account came exclusively from Wife's employment, and that he was not making a claim to any of those funds. Husband also stated, consistent with Sandy's testimony, that the

---

1. The parties are in agreement that the house which the parties were investing in is a house in Georgetown, Ohio. There was no additional testimony or evidence to explain what Sandy meant by "the residence."

$6,000 in his Scottrade account belonged to Sandy. However, Husband disagreed with the testimony of Wife and Sandy as to Wife's Scottrade account. Specifically, Husband claimed that the approximate $44,000 in Wife's Scottrade account was jointly owned by Wife and Sandy and that both Wife and Sandy contributed approximately $22,000 to the account. Finally, Husband stated that he did not believe he and Wife should have to pay the $40,000 back to Sandy because Wife had previously taken $50,000 from her 401K and given it to Sandy.

{¶ 6} On September 23, 2011, the magistrate issued her decision. The magistrate found that Husband and Wife had borrowed $40,000 from Sandy and that, at the time of the hearing, the loan had not been repaid. The magistrate further found that at least some of this $40,000 loan had been deposited into various investment accounts. Therefore, the magistrate ruled that Sandy would be repaid $40,000 by both parties using funds from Wife's Scottrade account and Husband's Fidelity account. Specifically, the magistrate ruled that Wife would return Sandy's $22,000 from Wife's Scottrade account as well as pay Sandy an additional $9,000 of Wife's funds from her Scottrade account. Husband would then pay Sandy an additional $9,000 from his Fidelity account, thereby paying Sandy a total of $40,000 from the parties' accounts.

{¶ 7} Wife timely objected to the magistrate's decision, arguing that all of the money in her Scottrade account was Sandy's property separate and apart from the $40,000 loan and, therefore, should not have been treated as part of the loan. The trial court performed an independent review of the record pursuant to Civ.R. 53(D) and determined that Husband and Wife did borrow $40,000 from Sandy that had not yet been repaid. The trial court further found that, although Sandy testified that she transferred other large sums to Wife and Husband's various accounts, there was insufficient evidence to establish that Husband and Wife owed Sandy more than the $40,000. The trial court then overruled Wife's objections.

{¶ 8}  In the same decision, the trial court then issued a Final Decree of Divorce, neither adopting, modifying, nor rejecting the magistrate's decision.  The trial court granted the divorce of the parties and made the following pertinent rulings:

> [Wife] shall retain the Vanguard account * * *, Wife's Scottrade account * * *, the Fidelity account * * *, and any other investment accounts in her name, free of any claims of [Husband.]  [Wife] shall take the necessary steps to pay her adult daughter, Sandy, the sum of $31,000 from the Fidelity account—$22,000 of which is Sandy's money that is to be returned to her and $9,000 shall be paid from [Wife's] separate funds * * *.
>
> [Husband] shall retain [his] Fidelity account * * *, [his] Scottrade account * * *, and any other investment accounts in his name, free of any claims of [Wife.]  [Husband] shall take the necessary steps to pay [Wife's] adult daughter, Sandy, the sum of $9,000 from these accounts * * *.

{¶ 9}  Wife now appeals the trial court's Final Decree of Divorce, raising a single assignment of error:

{¶ 10} THE TRIAL COURT ERRED BY FAILING TO FIND THAT THE PARTIES OWED THEIR DAUGHTER A MARITAL DEBT OF $40,000 IN ADDITION TO HER FUNDS HELD ON DEPOSIT IN EXCESS OF $50,000.

{¶ 11} In her sole assignment of error, Wife raises several issues for review.  However, many of these issues address the findings and determinations of the magistrate and not the trial court's findings and determinations as set forth in its Final Decree of Divorce.  Pursuant to Civ.R. 53(D)(4)(a), a "magistrate's decision is not effective unless adopted by the court."  In this case, the trial court neither adopted, modified, nor rejected the magistrate's decision; instead, the trial court independently reviewed the record of the case and made its own determinations.  Therefore, the magistrate's decision is not properly before us and we shall not address Wife's arguments relating solely to the magistrate's decision.[2]

---

2. These arguments include: (1) the magistrate erred in concluding that at least some of the $40,000 loan from Sandy was deposited in various investment accounts; (2) the magistrate erred in concluding that only half of the

- 4 -

{¶ 12} Wife raises two arguments in relation to the trial court's Final Decree of Divorce: (1) the trial court erred in overruling Wife's objection to the magistrate's decision that the funds in Wife's Scottrade account were separate from Sandy's loan to the parties and (2) the trial court erred in ordering Wife to pay Sandy $31,000 from Wife's Fidelity account.

{¶ 13} We shall first address Wife's contention that the funds contained in Wife's Scottrade account were Sandy's property separate and unrelated to the $40,000 loan Sandy made to the parties. Essentially, Wife is arguing that the trial court's classification of the property in Wife's Scottrade account as only half belonging to Sandy and the trial court's determination that this money was part of the $40,000 loan are against the manifest weight of the evidence.

{¶ 14} This court reviews a trial court's determination regarding the classification of property under a manifest weight of the evidence standard. *Singh v. Singh*, 12th Dist. No. CA2002-08-080, 2003-Ohio-2372, ¶ 5, citing R.C. 3105.17(B); *Homme v. Homme*, 12th Dist. No. CA2010-04-093, 2010-Ohio-6080, ¶ 60. We shall not reverse the trial court's factual findings as to the classification of property so long as its determination is supported by competent and credible evidence. *Homme* at ¶ 60, citing *Putman v. Putman*, 12th Dist. No. CA2008-03-029, 2009-Ohio-97, ¶ 26. "In determining whether competent and credible evidence exists, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." (Internal quotations omitted.) *Id.*, citing *Bey v. Bey*, 3rd Dist. No. 10-08-12, 2009-Ohio-300, ¶ 15.

---

money in Wife's Scottrade account belonged to Sandy; (3) the magistrate erred in finding that Wife's Scottrade account was in both Wife and Sandy's names; and (4) the magistrate erred in determining that Wife's Vanguard account was Wife's non-marital property when this property actually belonged to Sandy.

{¶ 15} In this case, the trial court found that the parties borrowed $40,000 from Sandy and that, based upon Husband's testimony, $22,000 in Wife's Scottrade account was Sandy's property. The trial court then determined that the $22,000 belonging to Sandy was a portion of the $40,000 loan. We must determine whether these findings are supported by competent and credible evidence.

{¶ 16} Although the parties are in agreement that Sandy loaned them $40,000 and that at least half of the $44,000 in Wife's Scottrade account is Sandy's money, there was no evidence that the money in Wife's Scottrade account had any connection to the loan. Given the evidence presented, it was within the trial court's discretion to accept the magistrate's finding that only half of the money in Wife's Scottrade account belonged to Sandy. "[I]ssues of credibility of witnesses and the weight to be given their testimony are issues for the trier of fact." *Singh*, 2003-Ohio-2372 at ¶ 7, citing *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3rd 77, 81 (1984). Though there was conflicting testimony at the hearing, Husband stated that Wife and Sandy each put approximately $22,000 into the account and the trial court, as the trier of fact, was in the best position to determine the credibility of this testimony. *See Singh*, 2003-Ohio-2372 at ¶ 7.

{¶ 17} However, there is nothing in the record to support the trial court's determination that Sandy's $22,000 portion of Wife's Scottrade account was a part of the $40,000 loan she made to the parties. Rather, the only testimony on the subject was from Sandy, who stated that $30,000 of the loan went to pay for a home in Georgetown, Ohio, $4,000 went to Wife to pay for "the residence," and $6,000 went to Husband which, the undisputed testimony indicates, was placed in Husband's Scottrade account. As such, the trial court's determination that the $22,000 in Wife's Scottrade account is part of the $40,000 loan from Sandy is not supported by the evidence. Consequently, we find that the trial court's decision was against the manifest weight of the evidence. The trial court's decision is, therefore,

- 6 -

reversed and remanded with instruction to issue judgment as follows: (1) the $22,000 contained in Wife's Scottrade account and belonging to Sandy should be reimbursed to Sandy separate and apart from any repayment of the $40,000 loan; (2) the $6,000 in Husband's Scottrade account (the only portion of the loan which was undisputedly placed in one of the parties' accounts) shall be distributed to Sandy as repayment for the $40,000 loan; and (3) Husband and Wife shall each owe Sandy an additional $17,000 upon the $34,000 balance of the original $40,000 loan which shall be allocated by the trial court.

{¶ 18} We now turn to Wife's second argument relating to the trial court's ruling that Wife pay Sandy $31,000 from Wife's Fidelity account. Essentially, Wife contends that there was no evidence presented at the divorce hearing to support a finding that any of Wife's funds in her Fidelity account belong to Sandy. We agree.

{¶ 19} As we have previously stated, the trial court found that Sandy was entitled to $22,000 from Wife's Scottrade account. However, the trial court then ruled that this money, and an additional $9,000, shall be disbursed from Wife's *Fidelity account.* This ruling went against not only the trial court's previous findings, but also the undisputed testimony of Husband, who stated that Wife's Fidelity account contained funds from Wife's 401K and that it was Wife's money only.

{¶ 20} Based upon the undisputed evidence at the hearing, as well as the trial court's previous findings, the trial court erred in ordering Wife to pay Sandy from Wife's Fidelity account. Therefore, on remand, the trial court shall clarify that any money belonging exclusively to Sandy separate and apart from the $40,000 loan was not held in Wife's Fidelity account.

{¶ 21} For the reasons set forth above, we find that the trial court erred in ruling that the $22,000 owned by Sandy and contained in Wife's Scottrade account was part of the $40,000 loan. We further find that the trial court erred in ordering Wife to repay Sandy's

$22,000 from Wife's Fidelity Account. Accordingly, Wife's sole assignment of error is sustained and the cause is reversed and remanded for further proceedings consistent with this opinion.

{¶ 22} Judgment reversed and remanded.

HENDRICKSON, P.J., and S. POWELL, J., concur.