[Cite as *Huynh v. Haskell*, 2013-Ohio-4983.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| NHI VIEN HUYNH, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-04-030 |
| | : | O P I N I O N |
| - vs - | | 11/12/2013 |
| | : | |
| DANNY T. HASKELL, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2010DRB01389


Nichols, Speidel & Nichols, Donald W. White, 237 Main Street, Batavia, Ohio 45103, for plaintiff-appellee

Cecelia J. Potts, 750 South High Street, P.O. Box 474, Mt. Orab, Ohio 45154, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Danny Haskell (Husband), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, distributing property between Husband, plaintiff-appellee, Nhi Vien Huynh (Wife), and Wife's adult daughter, Sandy Nguyen (Sandy). We affirm the judgment of the trial court.

{¶ 2} This case has previously been before this court in *Huynh v. Haskell*, 12th Dist.

Clermont No. CA2012-03-027, 2013-Ohio-656.  The following facts are taken from this

court's prior decision:

> [Wife and Husband] were married on December 31, 2008.  Wife filed for divorce on August 27, 2010.  A magistrate held a hearing on August 9, 2011 to resolve several issues including the division of monies belonging to Husband, Wife, and [Sandy].  Specifically, the parties were in dispute as to what monies contained in Husband and Wife's accounts belonged to Sandy.  As to these issues, Sandy, Wife, and Husband testified at the divorce hearing.
>
> According to Sandy's testimony, Sandy placed money in her mother's Scottrade account so that Husband could "trade it" and make a profit for Sandy.  Sandy stated that all of the money in Wife's Scottrade account belonged to Sandy and had "nothing to do with [Wife] or [Husband]."  Sandy further testified that the money contained in Husband's Scottrade account also belonged to Sandy and that she allowed Husband to borrow this money purportedly for tax purposes.  Sandy also referenced emails she received from Husband where he stated that "we can take care of your * * * scottrade [sic] account, it is your money and you know that I will never take your money."  Finally, Sandy testified that she also loaned Husband and Wife $40,000, stating that "$30,000 is to pay for the house that they're investing and the $6,000 that [Husband] borrow me [sic] and the $4,000 that [Wife] borrow[ed] to pay for the residence."[1]
>
> Wife testified that the money in her Scottrade account, her Vanguard account, and Husband's Scottrade account all belong to Sandy.  Wife further stated that Sandy had loaned the parties $40,000 when Husband was ready to purchase the Georgetown house.
>
> Finally, Husband testified that Wife had a Vanguard account, a Scottrade account, and a Fidelity account which were in her name only.  Husband acknowledged * * * consistent with Sandy's testimony, that the $6,000 in his Scottrade account belonged to Sandy.  However, Husband disagreed with the testimony of Wife and Sandy as to Wife's Scottrade account.  Specifically, Husband claimed that the approximate $44,000 in Wife's Scottrade account was jointly owned by Wife and Sandy and that both Wife and Sandy contributed approximately $22,000 to the account.  Finally, Husband stated that he did not believe he and Wife should have to pay the $40,000 back to Sandy because

---

1. The parties are in agreement that the house which the parties were investing in is a house in Georgetown, Ohio.  There was no additional testimony or evidence to explain what Sandy meant by "the residence."

Wife had previously taken $50,000 from her 401 K and given it to Sandy.

On September 23, 2011, the magistrate issued her decision. The magistrate found that Husband and Wife had borrowed $40,000 from Sandy and that, at the time of the hearing, the loan had not been repaid. The magistrate further found that at least some of this $40,000 loan had been deposited into various investment accounts. Therefore, the magistrate ruled that Sandy would be repaid $40,000 by both parties using funds from Wife's Scottrade account and Husband's Fidelity account. Specifically, the magistrate ruled that Wife would return Sandy's $22,000 from Wife's Scottrade account as well as pay Sandy an additional $9,000 of Wife's funds from her Scottrade account. Husband would then pay Sandy an additional $9,000 from his Fidelity account, thereby paying Sandy a total of $40,000 from the parties' accounts.

Wife timely objected to the magistrate's decision, arguing that all of the money in her Scottrade account was Sandy's property separate and apart from the $40,000 loan and, therefore, should not have been treated as part of the loan. The trial court * * * determined that Husband and Wife did borrow $40,000 from Sandy that had not yet been repaid. The trial court further found that, although Sandy testified that she transferred other large sums to Wife and Husband's various accounts, there was insufficient evidence to establish that Husband and Wife owed Sandy more than the $40,000. The trial court then overruled Wife's objections.

*Id.* at ¶ 2-7.

{¶ 3} Wife appealed the trial court's decision, arguing that its determination regarding the distribution of marital assets was against the manifest weight of the evidence. *Id.* at ¶ 13. After a review of the record, this court remanded the case to the trial court with instruction to issue a judgment as follows:

(1) the $22,000 contained in Wife's Scottrade account and belonging to Sandy should be reimbursed to Sandy separate and apart from any repayment of the $40,000 loan; (2) the $6,000 in Husband's Scottrade account (the only portion of the loan which was undisputedly placed in one of the parties' accounts) shall be distributed to Sandy as repayment for the $40,000 loan; and (3) Husband and Wife shall both owe Sandy an additional $17,000 upon the $34,000 balance of the original $40,000 loan which shall be allocated by the trial court.

- 3 -

*Id.* at ¶ 17.

{¶ 4} On remand, the trial court issued an "Entry Amending Decree of Divorce." The entry ordered Wife pay Sandy the sum of $22,000 from Wife's Scottrade account as well as $17,000 from Wife's separate funds as payment on the $34,000 balance of the original $40,000 loan to the parties by Sandy. In addition, the trial court ordered Husband pay Sandy the sum of $6,000 from his Scottrade Account and $17,000 from Husband's separate funds as payment on the $34,000 balance of the original $40,000 loan.

{¶ 5} Husband now appeals the trial court's decision on remand, raising the following assignment of error:

{¶ 6} THE TRIAL COURT ERRED BY FAILING TO FIND THAT THE $30,000.00 LOAN WAS A JOINT INVESTMENT AND A $6,000.00 LOAN WS (SIC) TO [HUSBAND] AND A $4,000.00 LOAN WAS TO [WIFE].

{¶ 7} Husband makes two arguments in his assignment of error. First, Husband argues the trial court erred by ruling he was required to repay Sandy any money at all, as Wife has previously repaid Sandy. We find this argument barred by the doctrine of res judicata.

{¶ 8} Res judicata encompasses both issue preclusion and claim preclusion. *Bartlett v. Sobetsky*, 12th Dist. Clermont No. CA2007-07-085, 2008-Ohio-4432, ¶ 14; *State ex rel. Kroger Co. v. Indus. Comm. of Ohio,* 80 Ohio St.3d 649, 651 (1998). Issue preclusion "precludes the relitigation of an issue that has been 'actually and necessarily litigated and determined in a prior action.'" *Bartlett* at ¶ 14, quoting *Krahn v. Kinney*, 43 Ohio St.3d 103, 107 (1989). Claim preclusion "prevents a party from litigating a cause of action after a prior court has rendered a final judgment on the merits of that cause as to that party." *Id.*

{¶ 9} Husband testified that Wife had repaid Sandy $50,000 from Wife's 401(K) and,

therefore, Husband was not responsible for repaying Sandy any portion of the $40,000 loan. The trial court weighed and rejected this portion of Husband's testimony, finding that the parties had yet to repay Sandy the $40,000 loan and ordering repayment. *See Singh v. Singh*, 12th Dist. Warren No. CA2002-08-080, 2003-Ohio-2372, ¶ 17 (holding that issues of credibility of witnesses and the weight to be given their testimony are issues for the trier of fact, who is in the best position to determine the credibility of this testimony). Husband did not directly appeal the trial court's original ruling, instead waiting until now to argue he is not responsible for any portion of the loan repayment. As the issue was previously litigated, a final judgment was rendered, and Husband failed to raise the issue on direct appeal, we find the argument barred by the doctrine of res judicata.

{¶ 10} Second, Husband argues the trial court erred by finding that Husband was responsible for repaying any more than $21,000 of the $40,000 loan. Husband acknowledges that he is responsible for repaying Sandy $6,000 from his Scottrade account. However, Husband contends that Wife is solely responsible for paying the $4,000 borrowed from Sandy to pay for "the residence." Thus, Husband claims he is only responsible for repaying Sandy an additional $15,000 from his separate funds rather than $17,000, as he should only be responsible for one-half of the "$30,000 joint debt," the parties accrued by taking a loan from Sandy to invest in the Georgetown property. We find Husband's argument barred by the "law of the case" doctrine.

{¶ 11} The "law of the case" doctrine provides that "decisions made by a reviewing court regarding legal questions remain the law of that case for all subsequent proceedings at both the trial and appellate levels." *State v. Blacker*, 12th Dist. Warren No. CA2011-02-012, 2011-Ohio-3916, ¶ 29, citing *Nolan v. Nolan*, 11 Ohio St.3d 1 (1984). In essence, "the doctrine compels trial courts to adhere to a reviewing court's mandates." *Id*. "'Absent extraordinary circumstances, such as an intervening decision by the Ohio Supreme Court, an

inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case.'" *Id.*, quoting *State v. Prom*, 12th Dist. Butler No. CA2004-07-174, 2005-Ohio-2272, ¶ 20.

{¶ 12} Because this court instructed the trial court to order Husband repay "an additional $17,000 upon the $34,000 balance of the original $40,000 loan," and the trial court acted accordingly, we find the trial court did not err in its ruling.

{¶ 13} Therefore, Husband's sole assignment of error is overruled.

{¶ 14} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.